**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.:_____

|  |  |
|---|---|
| GLOBAL RESOURCE, INC., <br><br> Plaintiff, <br><br> v. <br><br> MARIO D. GERMAN LAW CENTER, P.A., NEXUS CAPITAL MANAGEMENT, LLC, MARIO D. GERMAN, and MICHAEL J. KRANTZ, <br><br> Defendants. |  |

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Global Resource, Inc., who brings this Complaint against Defendants on the following grounds:

**JURISDICTION AND VENUE**

1. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, Plaintiff is a Delaware corporation with its principal place of business in Texas, and Defendants are citizens of Florida, as detailed in paragraphs 3 through 9, herein.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Palm Beach County, Florida, in the Southern District of Florida.

## THE PARTIES

3. Plaintiff Global Resource, Inc. (hereinafter "Global Resource") is a Delaware corporation formed in 2004 with its principal place of business in the State of Texas. Global Resource's sole director and owner is Sean Ramey (hereinafter "Ramey"), an individual who resides in Houston, Texas.

4. Defendant Mario D. German Law Center, P.A. (hereinafter "German Law Center") is a Florida for-profit corporation formed in 1999 with its principal address at 55 N.W. Fifth Avenue 400, Boca Raton, FL 33432. On information and belief, German Law Center's sole officer and director is Mario D. German, an individual who resides in Palm Beach County, Florida.

5. Defendant Nexus Capital Management, LLC (hereinafter "Nexus") is a Florida limited liability company formed on or about August 1, 2013 with its principal address at 1374 Cypress Way, Boca Raton, FL 33486. Nexus' sole member and manager is Defendant Michael J. Krantz, an individual who resides in Palm Beach County, Florida.

6. Defendant Mario D. German (hereinafter "German") is an individual who resides in Palm Beach County, Florida. German is the Director of Defendant German Law Center.

7. Defendant Michael J. Krantz (hereinafter "Krantz") is an individual who resides in Palm Beach County, Florida. Krantz is the sole member, with the title of "Manager", for Defendant Nexus.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

8. Plaintiff Global Resource is a company engaged in the business of, among other things, purchasing automotive and industrial materials and refining them to extract a variety of residual metal compounds.

9. In connection with these activities, in or around May 2020, Global Resource entered into agreements with three suppliers for catalytic converters, evidenced by purchase orders attached as Exhibits 1-3 hereto. Specifically, those agreements provided the following:

   a. Pursuant to a purchase order dated June 25, 2020, Global Resource agreed to order 1,500 kilograms of catalytic converters from a Venezuelan supplier for $75,000 [Exhibit 1];

   b. Pursuant to a purchase order dated July 12, 2020, Global Resource agreed to order 1,000 kilograms of catalytic converters from a Bolivian supplier for $55,000 [Exhibit 2]; and

   c. Pursuant to a purchase order dated July 13, 2020, Global Resource agreed to order 2,060 kilograms of catalytic converters from a Brazilian supplier for $86,520 [Exhibit 3].[1]

10. Because the Suppliers were located outside the United States and did not have merchant accounts set up to receive funds directly from Plaintiff's corporate credit account, Plaintiff and the Suppliers set out to find a solution to facilitate payment.

11. In or around May 2020, one of Plaintiff's Suppliers referred Plaintiff to Angely Quintero, an agent of Defendant Nexus. Quintero introduced Plaintiff to Nexus, which Quintero represented was a legitimate payment service that could facilitate payments from Plaintiff to the Suppliers.

12. Quintero did not disclose to Plaintiff that Quintero had an arrangement with at least one Supplier to receive a 2.5% commission for referring Plaintiff to Nexus.

13. In or around May 2020, Quintero set up an introductory phone call between Ramey, acting for the Plaintiff, Defendant Krantz, and Joseph J. Camargo, acting as the agent for German Law Center.

---

[1] The three suppliers will collectively be referred to herein as the "Suppliers" and the purchase orders will collectively be referred to herein as the "Purchase Orders".

14. During that phone call, Krantz and Camargo made the following representations about Nexus and German Law Center, respectively, to Ramey:

   a. Nexus was frequently engaged in providing payment services to companies and high net worth individuals who needed to transfer money overseas, including to and from Venezuelan citizens, which could be challenging to an inexperienced layperson;

   b. Nexus had a large book of clients who could attest to Nexus' legitimacy and efficacy as a payment servicer;

   c. Nexus frequently, if not exclusively, utilized bank accounts belonging to German Law Center as escrow accounts for facilitating payments between its clientele;

   d. German Law Center, whose representative Camargo was on the call, recognized, accepted, and actively participated in this business relationship by offering up its bank accounts for use as escrow accounts and directing funds pursuant to Nexus' and Nexus' clients' instructions; and

   e. Nexus and German Law Center were capable of and prepared to provide their services to Plaintiff by acting as transfer agent for the payment of funds from Plaintiff to the Suppliers.

15. Shortly thereafter, the Suppliers each signed an agreement with Nexus, titled "ESCROW / TRUST (Fiducia) AGREEMENT", whereby Nexus represented that it would facilitate the payments from Plaintiff to the Suppliers, acting as "agent" for the transactions in exchange for a commission of 2.5% of the total payment price on each transaction (hereinafter the "Escrow Agreement(s)"). One of those agreements is attached hereto, unsigned by the supplier. [*See* Exhibit 4]. Discovery should yield the executed copies of these agreements, which are not in Plaintiff's possession.

16. In July 2020, Nexus sent a letter to Plaintiff confirming Nexus' arrangement with the Suppliers (hereinafter the "Confirmatory Letter"). Specifically, Nexus stated:

   a. Nexus is retained primarily to provide Consulting, Custody, Paymaster, Escrow Services to facilitate the purchase, sale and delivery of assets to the Clients in the most secure and expeditious manner;

      b.    To provide the fastest most streamlined to facilitate Purchase and Sales of their assets, Nexus has engaged several Professional Associations (PA) and Law Firms to assist in these operations [sic]; and

      c.    Nexus is utilizing Attorney IOLTA accounts at principal USA banks to receive the funds for these transactions.

17.    The Confirmatory Letter also included a list of five bank accounts at Chase, Bank of America, and Wells Fargo with corresponding Swift Codes, routing numbers, and account numbers. Under the list of bank accounts, Defendant Krantz affixed his signature on behalf of Defendant Nexus accompanied by the statement: "I hereby swear, under penalty of perjury, that the information provided herein is true and correct." [See Exhibit 5].

18.    Nexus represented to Plaintiff that it would "utilize" Defendant German Law Center for the transactions at issue. Notably, one of the Bank of America accounts listed in the Confirmatory Letter with the account number ending in "4048" was German Law Center's IOLTA (Interest on Lawyers Trust Accounts) account. *Id.*

19.    To fulfill Plaintiff's obligations to the Suppliers pursuant to the Purchase Orders, and based on Defendants' representations that they would facilitate Plaintiff's payments, Plaintiff wired funds intended for disbursement to the Suppliers to German Law Center's IOLTA account. Plaintiff selected the IOLTA account specifically because, among other things, Plaintiff had a general understanding that lawyer trust accounts were subject to stricter regulation.

20.    Plaintiff initiated the following wires to German Law Center's Bank of America account with the account number ending in "4048":

| Date | Amount | Memo to Payee |
| --- | --- | --- |
| June 26, 2020 | $29,000 | Mario D. German Law Center, P.A. IOLTA Trust Acct Global Resource, Inc. Payment for 1500 kg Dadny 29k of 75k (1 of 3) plastiq id 3519318 |
| June 26, 2020 | $29,000 | Mario D. German Law Center, P.A. IOLTA Trust Acct Global Resource, Inc. Payment for 1500 kg Dadny 29k of 75k (2 of 3) |

| | | |
|---|---|---|
| | | plastiq id 3519328 |
| June 26, 2020 | $14,500 | Mario D. German Law Center, P.A. IOLTA Trust Acct Global Resource, Inc. Payment for 1500 kg Dadny 14.5k of 75k 3 of 3 plastiq id 3519332 |
| July 13, 2020 | $52,500 | Mario D. German Law Center, P.A. IOLTA Trust Acct Global Resource, Inc. Payment for 2060 kg SPrado 52.5k 1 of 1 plastiq id 3541225 |
| July 13, 2020 | $8,100 | Mario D. German Law Center, P.A. IOLTA Trust Acct Global Resource, Inc. Payment for 1000kg Knauerhase 8.1k of 55k 1 of 4 id 3540300 |
| July 13, 2020 | $7,400 | Mario D. German Law Center, P.A. IOLTA Trust Acct Global Resource, Inc. Payment for 1000kg Knauerhase 7.4k of 55k 2 of 4 id 3540308 |
| July 23, 2020 | $16,975 | Mario D. German Law Center, P.A. IOLTA Trust Acct Global Resource, Inc. Pmt for 1000kg Knauerhase 3 of 4 17k of 55k plastiq id 3555370 |
| July 23, 2020 | $20,925 | Mario D. German Law Center, P.A. IOLTA Trust Acct Global Resource, Inc. Pmt for 1000kg Knauerhase 4of4 21k of 55k plastiq id 3555372 |

21.     Plaintiff wired a total of $178,400 to German Law Center.  As detailed in the preceding table, the "Memo to Payee" in connection with each wire stated that the funds were intended for payment of a particular Supplier.

22.     On July 1, 2020, Defendant Krantz sent an e-mail to Plaintiff instructing Plaintiff to fully execute a form titled "Release of Funds in Escrow" (hereinafter "July 1 Release Agreement"). [*See* Exhibit 6].

23.     The July 1 Release Agreement, printed on Nexus letterhead and attached to that email, was formatted as a letter to Defendant German Law Center instructing it to release Plaintiff's previously deposited funds for the benefit of the Suppliers.

24.     Specifically, the Release Agreement instructed German Law Center to undertake the following:

> You are hereby authorized to release funds sent in or otherwise deposited by me, Mr. Sean Ramey into your IOLTA account in the amount of **SEVENTY TWO THOUSAND FIVE HUNDRED**

> **and 0/00 US Dollard ($72,500 USD)** as provided by this agreement.
>
> MARIO D. GERMAN LAW CENTER P.A. has received the above transfer and is in receipt of your transfer or wire receipt, and is prepared to distribute funds according to this agreement.
>
> MARIO D. GERMAN LAW CENTER P.A. is hereby directed to disburse said funds held in escrow in the following manner; NINTY [sic] SEVEN AND A HALF Percent (97.5%) of gross transfer is to be released as directed solely by Mr. Sean Ramey (the Remitter) without delay and or limitations after the funds have fully cleared and credited into MARIO D. GERMAN LAW CENTER, P.A. Escrow Account.  I, Sean Ramey direct these funds are to be distributed to Nexus Capital Management for the benefit of [one of the Suppliers].  The balance of funds held in Escrow by MARIO D. GERMAN LAW CENTER, P.A. is to be retained by Mario D. German Law Center, P.A. as fee for the Escrow and Paymaster services provided.

(all emphasis in original).

25. Additionally, the final paragraph of the Release Agreement contained the following language, titled "Disclosure":

> Once this document is duly executed it is a binding agreement that carries my full authority without any limitations whatsoever, and furthermore once the funds are transferred and or transmitted to the banking instructions as described herein above all liability and or responsibility on the part of MARIO D. GERMAN LAW CENTER, P.A. and/or Mario D. German, Esq. and or their officers is completely released without limitations and with prejudice.

(all emphasis in original).

26. On July 1, Ramey, acting for Plaintiff, executed and returned the July 1 Release Agreement to Krantz.  [*See* Exhibit 7].

27. On July 11, 2020, Ramey executed an identical "Release of Funds in Escrow" form directing German Law Center to release 97.5% of $52,500 Plaintiff previously deposited for the benefit of the second Supplier.  [*See* Exhibit 8].

28. On July 24, 2020, Plaintiff executed an identical "Release of Funds in Escrow" form directing German Law Center to release 97.5% of $37,900 Plaintiff previously deposited for the benefit of the third Supplier. [*See* Exhibit 9].

29. Defendants did not release the funds as instructed.

30. In reality, Defendants never intended to complete the transactions at issue, and, instead, transferred the money to themselves and/or for their own benefit.

31. None of the Suppliers ever received the funds deposited in German Law Center's account for their benefit.

32. On August 14 and August 19, Plaintiff contacted Krantz and Camargo via email to inquire as to the status of the funds. Neither Krantz nor Camargo responded to these emails. *See* Exhibits 10 and 11.

33. On October 27, 2020, Ramey spoke with Camargo—who was, at all times acting for The German Law Center—over the phone. During this call, Camargo, on behalf of German Law Center, agreed to advance $20,000 to one of the Suppliers to facilitate shipment of the goods (which were never delivered to Plaintiff due to lack of payment). In support of this transparent stalling tactic, Defendants fabricated a wire transfer confirmation. [*See* Exhibit 12].

34. German Law Center never intended to pay this advance, never paid this advance, and in fact made this representation to convince Plaintiff that Defendants had not stolen Plaintiff's funds or committed a fraud.

35. On December 14, 2020, Plaintiff emailed Krantz and Camargo once again requesting return of the funds. [*See* Exhibit 13]. Neither Krantz nor Camargo responded.

36. During this time period of August through December 2020, Plaintiff had several phone calls with Camargo acting for The German Law Center, who provided a variety of excuses

as to what happened to Plaintiff's money, including that (a) the money could not immediately be disbursed to the Suppliers due to anti-money laundering regulations governing large transactions with foreign individuals/entities; (b) that the Suppliers provided the wrong account numbers for disbursement; and (c) that the money had been invested in another venture and earning interest.

37. Defendants have avoided Plaintiff, concealed what happened to Plaintiff's money, and made representations designed to lull Plaintiff into believing nothing had gone wrong so that Plaintiff would not exercise its legal rights or alert the criminal authorities.

38. Defendants fraudulently induced Plaintiff to transfer funds to German Law Center's IOLTA account so that they could keep Plaintiff's money for themselves or use the money for their benefit. Indeed, that is precisely what they did.

39. Apparently, Defendants did not limit their scheme to Plaintiff as they have been sued by other victims for similar fraudulent behavior, including by Recycled Paper International, LLC in the case styled *Recycled Paper International, LLC v. Mario D. German Law Center, P.A., et al.*, Case No. 9:20-cv-81888 (S.D. Fla., Amended Complaint filed Oct. 22, 2020).

40. All conditions precedent to bringing this lawsuit have been satisfied or waived.

## CLAIM I
## CONVERSION AGAINST ALL DEFENDANTS

41. Plaintiff re-alleges and adopts all of the allegations set forth in paragraphs 1 through 40 above.

42. This is an action for conversion against German Law Center, German, Nexus, and Krantz.

43. German Law Center and Nexus, acting through the individuals discussed above, induced Plaintiff to transfer funds to German Law Center's IOLTA account in connection with an agreement that Defendants would facilitate payments to Plaintiff's Suppliers.

44. Plaintiff transferred money to German Law Center's IOLTA account in connection with an agreement that Defendants would facilitate payments to Plaintiff's Suppliers.

45. Defendants then converted the money by removing it from German Law Center's IOLTA account and using it for various improper purposes or otherwise retaining it for themselves.

46. At all material times, Plaintiff was the rightful owner of the monies transferred to German Law Center's IOLTA account.

47. Plaintiff has demanded the return of his monies, but the money has not been returned.

48. Plaintiff has been deprived of its possession of money in a manner that equates to conversion.

WHEREFORE, Plaintiff demands a judgment against Defendants, jointly and severally, for actual damages in an amount to be determined by the trier of fact, costs of the lawsuit, pre- and post-judgment interest, and such other relief as the trier of fact deems just and appropriate.

## CLAIM II
### CONSPIRACY TO CONVERT ASSETS AGAINST GERMAN AND KRANTZ

49. Plaintiff re-alleges and adopts all of the allegations set forth in paragraphs 1 through 40 above.

50. In or around May 2020, individual Defendants German and Krantz agreed to a series of unlawful acts that would convert Plaintiff's money for their own benefit and benefit of others.

51. The underlying tort was conversion of Plaintiff's money, as alleged in Claim I (which Claim is hereby incorporated, including paragraphs 41 through 48).

52. Each individual defendant had his own role in the conspiracy and performed overt acts in furtherance thereof:

   a. Krantz established and managed Nexus to have an entity to enter into "Escrow Agreements" with the Suppliers and to facilitate Plaintiff's Release Agreements with German Law Center;

   b. German established and managed German Law Center and its IOLTA account, in which Plaintiff deposited the converted monies. In addition, German controlled the IOLTA account and unlawfully disbursed Plaintiff's money from that account for his benefit, and for the benefit of the other Defendants herein.

53. Plaintiff has suffered significant damages in the loss of its money, as set forth herein, through the conversion of its money.

WHEREFORE, Plaintiff demands judgment against German and Krantz, jointly and severally, for actual damages in an amount to be determined by the trier of fact, costs of the lawsuit, pre- and post-judgment interest, and such other relief as the trier of fact deems just and proper.

## CLAIM III
## BREACH OF CONTRACT

54. Plaintiff re-alleges and adopts all of the allegations set forth in paragraphs 1 through 40 above.

55. Plaintiff entered into an oral contract, evidenced by the Releases attached as Exhibits 7-9, for Nexus to process the funds for the benefit of the suppliers. Alternatively, Plaintiff was a third party beneficiary of the Escrow/Trust Agreement entered into between Nexus and the suppliers, an example of which is attached as Exhibit 4.

56. Under the contractual terms, Nexus, through the German Law Center IOLTA account, was required to disburse $70,687.50, $51,187.50, and $36,952.50, which Plaintiff had previously deposited into German Law Center's IOLTA account, to Plaintiff's Suppliers.

57. Nexus breached the terms of the agreement to disburse the funds by diverting the funds for its own benefit, and for the benefit of the other Defendants in this lawsuit.

58. Nexus' conduct constitutes gross negligence or willful misconduct, as set forth herein, because it diverted the funds for the benefit of Defendants rather than disburse Plaintiff's funds to the respective Suppliers as instructed.

59. Plaintiff has suffered damages as a consequence of Nexus' material breaches of the contract.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against Nexus for actual damages in an amount to be determined by the trier of fact, costs of the lawsuit, pre- and post- judgment interest, and such other relief as the trier of fact deems just and appropriate.

## CLAIM IV
### BREACH OF FIDUCIARY DUTY AGAINST GERMAN, GERMAN LAW CENTER, AND NEXUS

60. Plaintiff re-alleges and adopts all of the allegations set forth in paragraphs 1 through 40 above.

61. German Law Center, as account holder for the IOLTA account in which Plaintiff deposited its monies in exchange for payment, was the effective trustee of Plaintiff's funds and owed a fiduciary duty to Plaintiff.

62. German, as sole member of German Law Center, being a member of the Florida Bar and benefiting from that designation, and otherwise holding himself out as having control over German Law Center's IOLTA account, was the effective trustee of Plaintiff's funds and owed a fiduciary duty to Plaintiff.

63. Nexus, as the agent facilitating the transfer through the German Law Center's IOLTA account to the suppliers of Plaintiff, owed a fiduciary duty to Plaintiff to execute the transfer according to the consent and direction of Plaintiff.

64. Indeed, German, German Law Center, and Nexus, as trustees of the funds transferred by Plaintiff with the obligation to act primarily for the benefit of Plaintiff and the suppliers, were given the trust and special confidence of Plaintiff to execute the funding instructions to the suppliers as agreed.

65. German, German Law Center, and Nexus breached their fiduciary duties by failing to disburse Plaintiff's money consistent with its instructions and/or failing to return those funds to Plaintiff, resulting in a complete loss of all monies Plaintiff deposited in German's and German Law Center's IOLTA account.

66. As a result, Plaintiff has suffered financial damages in the form of the loss of all the funds deposited in German's and German Law Center's IOLTA account.

67. German, German Law Center, and Nexus had actual knowledge that failing to disburse Plaintiff's money in accordance with Plaintiff's instructions was wrong and that failure to do so would result in Plaintiff losing these funds.

68. Despite that knowledge, German, German Law Center, and Nexus intentionally pursued that course of conduct, which indeed resulted in Plaintiff's total loss of the funds it deposited in German Law Center's IOLTA account.

WHEREFORE, Plaintiff prays that this Court enter a judgment in its favor against German, German Law Center and Nexus for actual and punitive damages in an amount to be determined by the trier of fact, costs of the lawsuit, pre- and post-judgment interest, and such other relief as the Court deems just and appropriate.

## CLAIM V
## FRAUD IN THE INDUCEMENT

69. Plaintiff re-alleges and adopts all of the allegations set forth in paragraphs 1 through 40 above.

70. This action is against all defendants except German.

71. Nexus, directly and through its agent, Krantz, intentionally made false statements or omitted material facts regarding its role as escrow/transfer agent on Plaintiff's contracts with the Suppliers, as set forth herein.

72. German Law Center, directly and through its agent, Camargo, intentionally made false statements or omitted material facts regarding its intention to hold Plaintiff's funds in its IOLTA account and disburse Plaintiff's funds according to Plaintiff's instructions, as set forth herein.

73. Defendants Nexus and German Law Center, and their representatives, knew that the representations were false and intended for Plaintiff to rely on those false representations in wiring its money to German Law Center's IOLTA account to enrich themselves.

74. Plaintiff reasonably relied on those false representations to its detriment. Specifically, the representations and omissions caused Plaintiff to wire $178,400 to German Law Center's IOLTA account as set forth herein, and to delay seeking enforcement of its rights while it was being led on by the ongoing fraud.

75. As a result of the false statements, material omissions, and fraudulent conduct by Defendants, Plaintiff suffered financial damages in the form of loss of the monies deposited in German Law Center's IOLTA account.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor against all Defendants except German, awarding compensatory and punitive damages, costs of the lawsuit, and such other relief as the Court deems just and appropriate.

## CLAIM VI
## NEGLIGENT MISREPRESENTATION

76. Plaintiff re-alleges and adopts all of the allegations set forth in paragraphs 1 through 40 above.

77. This action is against all defendants except German.

78. Nexus, directly and through its agent, Krantz, intentionally made false statements or omitted material facts regarding its role as escrow/transfer agent on Plaintiff's contracts with the Suppliers, as set forth herein.

79. German Law Center, directly and through its agent, Camargo, intentionally made false statements or omitted material facts regarding its intention to hold Plaintiff's funds in its IOLTA account and disburse Plaintiff's funds according to Plaintiff's instructions, as set forth herein.

80. Defendants, except German, should have known that the statements made to Plaintiff were false, and would lead to Plaintiff's reliance thereon.

81. Defendants, except German, intended for Plaintiff to rely on the false representations that, among other things, Plaintiff's money that it deposited in German Law Center's IOLTA account would be disbursed to the Suppliers consistent Plaintiff's instructions.

82. Plaintiff reasonably and justifiably relied on the false statements to Plaintiff's detriment, including, but not limited to, wiring $178,400 to German Law Center's IOLTA account and delaying enforcement of its rights based on the false statements.

83. Defendants' conduct, except German, constituted gross negligence as their conduct was so reckless or wanting in care, as set forth herein, that it constituted a conscious disregard for the rights of Plaintiff. Among other things, Defendants knew they intended to misappropriate Plaintiff's money once it was deposited into German Law Center's IOLTA account.

84. As a direct and proximate result of this conduct, Plaintiff suffered financial damages in the form of loss of the funds wired to German Law Center's IOLTA account.

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor against Defendants except German, awarding compensatory and punitive damages in an amount to be determined at trial, costs of the lawsuit, and such other relief as the Court deems just and appropriate.

## CLAIM VII
## UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

85. Plaintiff re-alleges and adopts all of the allegations set forth in paragraphs 1 through 40 above.

86. Plaintiff conferred a benefit on all Defendants by transferring Plaintiff's money to German Law Center's IOLTA account, which was used to benefit all Defendants by retaining all of the funds for themselves or used for their benefits.

87. Defendants voluntarily accepted and retained the benefits conferred.

88. Defendants' acceptance and retention of the benefits under these circumstances (of theft and/or conversion, as set forth in Count I, which is incorporated herein) makes it inequitable for Defendants to retain such benefits without returning the amount wired into German Law Center's IOLTA account to Plaintiff.

89.     Defendants have been unjustly enriched by Plaintiff's transfer of money to German Law Center's IOLTA account, that was kept by, and used for, Defendants' benefit.

WHEREFORE, Plaintiff prays that this Court enter judgment in favor against all Defendants for actual damages in an amount to be determined by the trier of fact, costs of the lawsuit, pre-and post-judgment interest, and such other relief as the Court deems just and appropriate.

Respectfully submitted this 16th day of March, 2021.

| **WEINBERG WHEELER HUDGINS GUNN & DIAL, LLC** | **SILVER LAW GROUP** |
|---|---|
| /s/Aaron M. Cohn | /s/ Scott L. Silver |
| Aaron M. Cohn, Esq. | Scott L. Silver |
| Florida Bar No.: 95552 | Fla. Bar No. 095631 |
| Weinberg Wheeler Hudgins Gunn & Dial, LLC | Ryan Schwamm |
| | Fla. Bar No. 1019116 |
| 3350 Virginia Street, Ste. 500 | 11780 W. Sample Road |
| Miami, FL 33133 | Coral Springs, Florida 33065 |
| T: (305) 455-9500 | T: (954) 755-4799 |
| F: (305) 455-9501 | F: (954) 755-4684 |
| E-mail: acohn@wwhgd.com | E-mail: ssilver@silverlaw.com |
| malvarez@wwhgd.com | rshwamm@silverlaw.com |
| dmallqui@wwhgd.com | rfeinberg@silverlaw.com |
| *Counsel for Plaintiff* | *Counsel for Plaintiff* |